## KANUEBBE v. McCUISTION et al.

No. 22118. May 1, 1934.

Choice D. Holden and Hal Welch, for plaintiff in error.

Burke & Trice and Barrett & Dickson, for defendant in error L. P. McCuistion.

CULLISON, V. C. J. Hampton Kanuebbe, as plaintiff, instituted suit against L. P. McCuistion and others, defendants, seeking to recover an undivided one-third interest in and to certain real property located in Choctaw county, Okla.

The record discloses that Lymon Roberson, a full-blood Choctaw Indian, died in 1907, but prior to statehood, leaving surviving his wife and two children, Tobias Roberson and Aurelia Roberson, by said wife. The surviving wife and two children sold the allotment of Lymon Roberson to Hawk on March 29, 1909, and conveyance was made through the proper court, conveying all of their right, title, and interest in and to said land.

Hawk immediately went into possession, and he and his grantees have been in actual, open, notorious, adverse, and exclusive possession of the land since said date. McCuistion, principal defendant in the case at bar, acquired title by deed on April 5, 1926. Plaintiff commenced this suit on April 3, 1929, seeking to recover an undivided one-third interest in said land which he claims was inherited by his mother, Betsy Kanuebbe, a daughter of Lymon Roberson, the original allottee.

The trial court found that Betsy Kaneubbe was the legitimate child of Lymon Roberson and Eliz Hotema, and that she inherited one-third interest in the land of said Lymon Roberson, subject to the dower of Sophia Roberson, the widow. Betsy Kaneubbe was a full-blood Choctaw Indian, who died intestate in 1920, leaving surviving as her sole and only heirs four children, one of whom is the plaintiff. Plaintiff had procured the interest of each of the other three children in and to such interest as they possessed in said land prior to the institution of this suit.

The court held that plaintiff's right to an interest in and to said land under consideration was barred by the statutes of limitation, from which judgment plaintiff appeals and contends that:

"Since the trial court definitely determined that the plaintiff and his grantors inherited a one-third interest in this land, there is but one question for this court to determine: That is, under the facts established by the defendant, and found by the trial court, is plaintiff's action barred by the statute of limitations of Oklahoma?"

On April 12, 1926, Congress passed an act, section 2 of which is as follows (Act of Congress, ch. 115, vol. 44 U. S. Stat. L. 240, of the 69th Congress, passed and approved April 12, 1926, section 2):

"The statutes of limitations of the state of Oklahoma are hereby made and declared to be applicable to and shall have full force and effect against all restricted Indians of the Five Civilized Tribes, and against the heirs or grantees of any such Indians, and against all rights and causes of action heretofore accrued or hereafter accruing to any such Indians or their heirs or grantees, to the same extent and effect and in the same manner as in the case of any other citizen of the state of Oklahoma, and may be pleaded in bar of any action brought by or on behalf of any such Indian, his or her heirs or grantees, either in his own behalf or by the government of the United States, or by any other party for his or her benefit, to the same extent as though such action were brought by or on behalf of any other citizen of said state: Provided, that no cause of action which heretofore shall have accrued to any such Indian shall be barred prior to the expiration of a period of two years from and after the approval of this act, even though the full statutory period of limitation shall already have run or shall expire during said two years' period, and any such restricted Indian, if competent to sue, or his guardian, or the United States in his behalf, may sue upon any such cause of action during such two years' period free from any bar of the statutes of limitations."

Said section was construed by this court in the case of Tomlin v. Roberts, 126 Okla. 165,

258 P. 1041, and Deere v. Gypsy Oil Co., 160 Okla. 237, 15 P. (2d) 1086. In the latter case this court held:

"In connection with the above state of facts, we have carefully considered said act and the purpose and intent of Congress in passing the same, and interpret and construe said act to mean: That an Indian, to whom had accrued a cause of action, but upon which said cause the statute of limitations had not run, could bring a suit thereon within two years from the date of the passage of said act, provided said cause of action was a valid cause of action against which no limitation existed at the time of the passage of said act.

"We further hold that said act intended that where a cause of action had accrued to an Indian long prior to the passage of said act, and the various statutes of limitation of the state of Oklahoma had run against said cause of action, and that the same was barred under the said statute of limitation, under such circumstances, said cause of action was not revived by said act of Congress. That it was not the intention of Congress to revive dead causes of action by the proviso in said act, but it was the legislative intent to preserve to said persons for a period of two years such causes of action as would mature within the two-year period of time. Thus, where an Indian had a cause of action upon which the statute of limitations would run shortly after the passage of said act of Congress, said Indian would have two years after the passage of said act to bring suit thereon under the saving clause of the proviso, but said proviso does not apply where the statute of limitations has run. This we consider as the logical and reasonable meaning to be given to the language used in said statute."

We must next determine whether or not defendant acquired title in and to that part of the property inherited by plaintiff's mother by actual, open, notorious, adverse, and exclusive possession.

Defendant and his grantors entered into actual, open, notorious, adverse, and exclusive possession of said land on March 29, 1909, and have been in such possession of said land ever since said date.

Plaintiff further contends:

"Notice of the adverse claims of a tenant in common, either actual or constructive, is a necessary and indispensable element of adverse possession. No actual motive of an adverse claim by the grantees of Tobias Roberson and Aurelia Cobb, nee Roberson, was either pleaded or proven, and the trial court found no facts upon which actual notice could be imputed to Betsy Kaneubbe. Since she was a full-blood Indian heir, and

the lands restricted under the acts of Congress, she was under a disability so far as the land was concerned, to the extent that she was incapable in law of receiving or being charged with notice of the adverse character of the possession of the defendants. This is true regardless of the Act of Congress, 1926, placing the statute of limitations of Oklahoma in force."

In the case of International Land Co. v. Smith, 103 Okla. 101, 229 P. 601, at page 104 of the Oklahoma Reports, this court held:

"In Hendricks v. Musgrove (Mo.) 81 S. W. 1265, the Missouri court held that:

" 'In order for one tenant in common to acquire title by limitation against another tenant in common, he must do some act towards his cotenant that will amount to a disseisin or a repudiation or denial of the rights of his cotenant, and such as will show an intention to hold adversely to his cotenant, and such act must be totally irreconcilable with a recognition of the rights of his cotenant. Long v. McDow, supra, and cases cited. It is not essential, however, that it be shown that such acts were brought to the notice of the cotenant. Boyce v. Railroad, 168 Mo., loc. cit. 593, 68 S. W. 920, 58 L. R. A. 442.'

"The defendant Smith had done all required by the rule there announced.

"In Fuller v. Swensberg, 106 Mich. 305, the Michigan court held that:

" 'If a cotenant has occupied the common property exclusively, improving it and taking the whole rents and profits without claim or objection by the others, though they lived in the same neighborhood, his possession must be deemed adverse, and, if continued sufficiently long, creates in his favor a title by prescription to the real property.' "

In the case of Connor v. Thornburgh, 140 Okla. 16, 282 P. 122, this court held:

"Where a party takes actual possession of an Indian allotment under properly executed deeds purporting to convey all the title from the heirs of the deceased allottee, who died intestate, the owner of the property, and retains the actual, open, notorious, adverse, and exclusive possession of all the land, claiming to own all the title, and collects and appropriates the rents and profits thereupon, and continues in such possession without interruption for the statutory time, such possession creates in his favor a title by limitation against a prior grantee of any one or more of the heirs of the allottee, and amounts to an ouster of his cotenant if such cotenancy was ever created by such prior conveyance."

In the case at bar defendant McCuistion and his grantors have been in the actual,

open, notorious, adverse, and exclusive possession of said land since 1909. They have exercised complete control over the same, received all the rents and profits therefrom. No other person was recognized as having any right, title, or interest in and to said property.

Under the holding of this court in the International Land Co. Case, supra, and Connor v. Thornburgh, 140 Okla. 16, 282 P. 122, supra, the facts in the case at bar were sufficient to start the statutes of limitation running against plaintiff and his mother, and her heirs; and upon the expiration of the statutory period of time, to wit, 1924, defendants acquired good title in and to said property by actual, open, notorious, adverse, and exclusive possession. Section 99, O. S. 1931.

Plaintiff's third contention is that:

"The Act of Congress of 1926, placing the statute of limitations of Oklahoma in force against restricted Indians and their lands, was approved on April 12, 1926. Under the terms of this act, plaintiff had two years from such approval within which to commence this action. The defendant McCuistion took title to the land prior to the approval of this act, and on April 8, 1926. He was then absent from the state of Oklahoma and remained in the state of Texas so that the statute of limitations was tolled during his absence under the provisions of section 188, C. O. S. 1921."

Plaintiff's first, second, and third causes of action as pleaded in his petition are covered by section 109, O. S. 1931, and section 183, O. S. 1931, provides that service by publication may be had in all such cases. Plaintiff contends that, since defendant McCuistion was absent from the state, said absence tolled the running of the statute of limitations under section 104, O. S. 1931.

In the case of Graves v. Foster, 158 Okla. 36, 12 P. (2d) 502, this court passed upon said question, and held:

"Section 188, C. O. S. 1921, suspending the statute of limitation during absence of the defendant from the state, is not applicable in a case where relief may be given without personal service of process upon the defendant."

This holding is conclusive of said question.

Under the Act of Congress, supra. which was approved April 12, 1926, even if applicable to plaintiff, he had only two years to institute his suit, but plaintiff did not file this suit until 1929.

The judgment of the trial court holding that plaintiff was barred by the statute of limitations was proper.

The judgment of the trial court is affirmed.

RILEY, C. J., and McNEILL, OSBORN, and BUSBY, JJ., concur.